837 F.2d 1091
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Francis John COGLEY, Jr., and Gerald E. Grace, Defendants-Appellants,
v.
UNITED STATES of America, Plaintiff-Appellee.
 Nos. 86-2126, 86-2153.
 United States Court of Appeals, Sixth Circuit.
 Jan. 27, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges, and HULL, Chief District Judge.*
 PER CURIAM.
 
 
 1
 The defendants in these actions appeal from jury verdicts for mail and wire fraud, 18 U.S.C. Secs. 1341, 1343, as well as transportation of money procured through fraud in interstate commerce, 18 U.S.C. Sec. 2314. For the reasons set out below, we affirm.
 
 I.
 
 2
 The scheme which lead to these convictions involved mineral leases to Alaska real estate. According to the evidence produced at trial, Gerald Grace was a half owner of North American Lease Acquisition (NALA) in West Bloomfield, Michigan, along with one Steve Sawyer. Defendant Cogley worked for Grace in the West Bloomfield office. NALA was in the business of purchasing mineral rights to government land in Alaska for one dollar an acre (after an initial $75 filing fee) and then trying to sell these leases to others for one hundred dollars an acre. Potential customers were told that the land was rich in oil deposits and that oil companies would pay a nice profit for drilling rights to the real estate. In fact, the promoters had reason to know that the land was devoid of oil and that no oil companies would purchase drilling rights to the land offered.
 
 
 3
 As a result of this scheme, approximately 24 people sent NALA a total of $100,000 to purchase mineral rights to the remote Alaska property. Cogley persuaded approximately one half of these people to buy the leases. One of the people contacted by NALA, however, unfortunately for defendants, was Brian Meyers, a California prosecutor. Meyers talked several times on the telephone with Grace after the NALA office had contacted him. Ignorant of his position, Grace tried to sell Alaska leases to Meyers, who taped the conversations, and these tapes were admitted into evidence against Grace at trial.
 
 
 4
 Grace and Cogley were indicted and tried together, and both were represented by the same attorney. The district court held a hearing to determine whether joint representation was proper pursuant to Fed.R.Crim.P. 44(c). The government raised the question of potential conflict of interest. Satisfied that both defendants understood the risk and hazard of joint representation and that they waived their rights to be represented by separate counsel, the district court allowed the two defendants to be represented by attorney Dean Metry. Their defense theory was that they had no intent to defraud anyone, because both believed the Alaska property was a sound investment. Specifically, Grace maintained that he relied on Sawyer's representations that the land was a bona fide investment, while Cogley asserted that he relied on Grace's representations to the same effect.
 
 
 5
 This defense failed to persuade the jurors, however, and the jury convicted both defendants. Grace received seven years of confinement for his conviction on every count of the 46 count indictment. Cogley was given two years imprisonment following his conviction on one count of mail fraud, two counts of wire fraud, and one interstate transportation charge.[1] In addition, the defendants were ordered to make restitution; $108,700 in the case of Grace and $10,000 in the case of Cogley. This appeal followed.
 
 II.
 
 6
 Grace makes three arguments in favor of overturning his conviction. First he claims it was a violation of the fourth amendment to admit his taped conversations with Brian Meyers absent a showing that a warrant was issued. Secondly, he claims error because the protection against double jeopardy was compromised when he was exposed to conviction under the fraud counts and the interstate transportation charges. Finally, he claims his right to a fair trial was violated when the trial judge instructed the jury that the government had to prove its cause beyond a reasonable doubt, but not beyond all possible doubt. We find all these arguments to be without merit.
 
 
 7
 We turn first to Grace's argument concerning the wiretap. Title 18 U.S.C. Secs. 2511, 2515 and 2518 operate to prevent any telephone recording from being introduced into evidence without a warrant allowing such a recording. Section 2511(2)(c), however, provides an exception to this ban by permitting a party to the conversation to consent to the wiretap. In this case, it is undisputed that a party to the Grace-Meyers conversation, Meyers, consented to the recording of their conversation. Grace does not challenge this, but asserts that it was unfair for Meyers not to identify himself as a prosecutor.
 
 
 8
 In United States v. Hodge, 539 F.2d 898 (6th Cir.1976), cert. denied sub nom. Robertson v. United States, 429 U.S. 1091 (1977), this court upheld that Sec. 2511(2)(c) exception, partially on the basis that no one has the right to expect incriminating secrets will be kept secret when told to others. Id. at 904 (citing United States v. White, 401 U.S. 745, 751 (1971), and Hoffa v. United States, 385 U.S. 293, 302 (1966)). This reasoning has been upheld as recently as 1984 in United States v. Scaife, 749 F.2d 338, 345 (6th Cir.1984).
 
 
 9
 As to Grace's complaint that Meyers should have identified himself, this court has rejected such arguments in other contexts because of the deception and guile sometimes inherent in police investigations. In United States v. Passarella, 788 F.2d 377 (6th Cir.1986), the defendant objected to the introduction of statements made by him when he called the home of a friend and was answered by a policeman. While admitting that the police officer was validly on the premises and could answer the phone, the defendant argued that it was unfair for him not to have identified himself as an officer. The court rejected his claim by stating the officer had every right to deceive the defendant: "... the Supreme Court has always sanctioned a certain degree of deception or subterfuge on the part of law enforcement authorities as a necessary incident to the investigation of unlawful activities, which are, by their nature, covert and secretive." Passarella at 380. This rationale applies to this case, and we thus reject this claim.
 
 
 10
 Grace also claims that there was a double jeopardy violation in convicting him of both the fraud charges and the interstate transportation charge. However, Grace cannot make out this claim in light of Blockburger v. United States, 284 U.S. 299 (1932), and we therefore reject his challenge.
 
 
 11
 The Blockburger test requires a court to determine whether proving the elements of one offense will necessarily result in a conviction under another statute. A finding of double jeopardy is based on the assumption that Congress does not intend two offenses with identical elements to be the basis for multiple punishments. Blockburger, id., Ball v. United States, 470 U.S. 856 (1985); United States v. Woodward, 469 U.S. 105 (1985); Albernaz v. United States, 450 U.S. 333, 337-38 (1981). If the requisite elements of the offenses are dissimilar, the Blockburger test indicates that no double jeopardy violation should be found. A defendant may still, however, point to clear evidence that Congress did not intend the punishments to be cumulative. Woodward, 469 U.S. at 108-09; United States v. Zackert, 783 F.2d 677, 678 (6th Cir.1986).
 
 
 12
 It is clear in this case that the elements of Secs. 1341 and 1343 are different from those of Sec. 2314. The mail fraud offenses both require a scheme to defraud, but Sec. 1341 requires some use of the mails in furtherance of the scheme, while wire fraud requires that interstate wire be used as part of the plan. United States v. Bibby, 752 F.2d 1116, 1125-26 (6th Cir.1985). Contrasted with these offenses are elements of Sec. 2324 which requires a person to have transported or caused to be transported more than $5000 in interstate commerce, with knowledge that the money was procured through fraud. United States v. Mosley, 786 F.2d 1330, 1334 (7th Cir.), cert. denied, 106 S.Ct. 2919 (1986). Grace not only fails the Blockburger analysis, but he also does not indicate any congressional intent to preclude punishments under each of these statutes separately. Here, too, this claim of defendants must fail.
 
 
 13
 Grace next challenges his conviction based on his belief that the district court improperly instructed the jury concerning reasonable doubt. Although this instruction was not included in the record, Grace's version of the judge's instruction is not challenged:
 
 
 14
 Now, its now required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt.... A reasonable doubt is a doubt based upon reason and common sense. It is a doubt that grows out of the evidence and lack of evidence in a particular case. In other words, it's not a flimsy, fanciful of fictitious doubt that you can raise about anything or everything, nor is it a doubt based upon sympathy, bias or prejudice....
 
 
 15
 Grace contends that this elaboration mischaracterized the government's burden of proof.
 
 
 16
 We find no error in telling a jury that the government need not dispel all doubt about a defendant's guilt. The government must produce enough evidence to erase a reasonable doubt. The instruction at issue has, in substance, been found not to be erroneous. See, e.g., United States v. Hart, 640 F.2d 856, 860 n. 3 (6th Cir.), cert. denied 451 U.S. 992 (1981). See also Devitt and Blackmar, Federal Jury Practice and Instructions Sec. 11.14 p. 310 (West 1977 and 1987 Supp.).
 
 
 17
 Although this instruction here perhaps needlessly elaborates upon a definition of reasonable doubt, and we do not necessarily approve this form, we find no error requiring reversal. See United States v. Stead, 422 F.2d 183 (8th Cir.), cert. denied, 397 U.S. 1080 (1970). Taken as a whole, the instruction simply points out that the jury should not convict if it has a reasonable doubt about the defendant's guilt based on relevant evidence.
 
 III.
 
 18
 Defendant Cogley raises two additional issues. First, he asserts that it was error for the district court not to have conducted two separate hearings when it became aware that both defendants were jointly represented. Cogley advocates one hearing to advise the defendants of their rights to separate counsel and to consider a waiver of that right, and then another hearing to determine if the waiver given was voluntary. Second, Cogley claims it was error for the district court not to sever the trials, although neither made an objection to their joint trial. Upon consideration, we find these claims also meritless.
 
 
 19
 Fed.R.Crim.P. 44(c) requires a district judge to hold a hearing to determine whether a serious conflict of interest exists when he becomes aware that defendants were jointly represented. If it appears that a conflict may arise, "the court shall take such measures as may be appropriate to protect each defendant's right to counsel." Id.
 
 
 20
 The Rule does not elaborate what steps must be taken if a potential conflict is found, but we have held that where a judge warns a defendant of potential conflicts with representation, and where he emphasizes that each defendant has a right to separate and independent counsel, the Rule is satisfied when the defendant waives that right. United States v. Krebs, 788 F.2d 1166, 1172-73 (6th Cir.1986); United States v. Gullett, 713 F.2d 1203, 1213-14 (6th Cir.1983), cert. denied, 464 U.S. 1069 (1984).
 
 
 21
 The record shows that Judge DeMascio fully complied with this requirement in this casae. The judge told both defendants that it was dangerous for them to be represented by a single attorney where one of them may be significantly more culpable than the other. He expressly told them that there was a chance that a jury might infer guilt to Cogley because of his representation by Grace's lawyer, and that they were "making a big mistake" by being jointly represented. Despite these warnings, Cogley plainly waived his right to be separately represented. See Krebs and Gullett, supra.
 
 
 22
 Cogley argues that a separate hearing should have been held to determine the voluntariness of his waiver, relying upon United States v. Phillips, 699 F.2d 798 (6th Cir.1983). Phillips, however, did not involve joint representation of defendants, but a conflict between a defendant and the individual paying his legal expenses. Phillips is easily distinguishable on the facts of this case.
 
 
 23
 Cogley also asserts that the trial court committed error when it allowed him to be tried with Grace. Despite the fact that no motion for misjoinder or severance was ever made, he contends that he may still raise this challenge on appeal. Cogley's brief deals with the severance issue in terms of misjoinder under Fed.R.Crim.P. 8(b). To the extent that this is an 8(b) issue, we have held that appellate review is foreclosed when an untimely motion is made. United States v. Rox, 692 F.2d 453, 454 (6th Cir.1982). If we were to treat Cogley's assignment of error as a motion to sever under Fed.R.Crim.P. 14, appellate review is still not permitted where no motion was made in the district court. United States v. Green, 561 F.2d 423, 426 (2nd Cir.1977), cert. denied, 434 U.S. 1018 (1978). We have also held that this kind of claim will be waived unless a motion is renewed at the close of the evidence. United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987). We will not consider this claim made for the first time on appeal.
 
 
 24
 In any event, in an appeal from a refusal to sever, the appellant must show an abuse of discretion through a strong showing of prejudice. Swift, 809 F.2d at 322; United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir.1985), cert. denied sub nom., Graewe v. United States, 474 U.S. 1068 (1986). The only claim Cogley makes is that the jury may have become confused as to what he did. The danger of jury confusion in a joint trial must be weighed against society's need for speedy trials. See Swift and Gallo, supra. The jury is deemed capable of keeping the evidence against each defendant separate, and it found cogley not guilty on a number of counts. United States v. Frazier, 584 F.2d 790, 795 (6th Cir.1978). Cogley's claim is no basis for reversal on this ground.
 
 IV.
 
 25
 The decision of the district court and the jury verdict is AFFIRMED accordingly.
 
 
 
 *
 THE HONORABLE THOMAS G. HULL, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 The jury found Cogley not guilty of 7 other mail fraud counts, and 13 other wire fraud charges