**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Angel ANGUIANO and Jose Ramirez,
Sr., Defendant–Appellants.**

Nos. 98–5605, 98–6130.

United States Court of Appeals,
Sixth Circuit.

March 29, 2001.

See also 242 F.3d 348.

Before MERRITT and SILER, Circuit Judges; and SARGUS, District Judge.[*]

MERRITT, Circuit Judge.

This unpublished decision rules on all of the issues not discussed in our published opinion concerning Jose Ramirez Sr.'s appeal based on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[1] We hereby affirm all of the district court's decisions discussed herein. These defendants were involved in the financing portion of a ten kilogram cocaine purchase in Nashville, Tennessee. Their involvement took place when Jose Ramirez Jr. (Ramirez Sr.'s son)[2] and Jose Magdaleno, the leaders of the conspiracy, were unable to procure the cash necessary to buy ten kilograms of cocaine from undercover DEA agent Nelson Gonzalez. Ramirez Jr. asked his father for the money and shortly thereafter Ramirez Jr. and Magdaleno went to a Nashville hotel room where they took delivery of the cash from defendant Angel Anguiano. Ramirez Sr. was convicted of one count of conspiracy to distribute and possess with intent to distribute cocaine, and one count of attempted possession with intent to distribute cocaine. Anguiano was acquitted of conspiracy charges, but was convicted of attempted possession with intent to distribute cocaine. Ramirez Sr. received two concurrent 240 month terms of imprisonment and Anguaino received 87 months of imprisonment.

### 1. Anguiano's Consent to Search

Anguiano contends that he never consented to a government search of his house in San Bernardino, California, and that therefore evidence stemming from that search should have been suppressed. We review the district court's determination that a defendant consented to a search of his property for clear error. *United States v. Van Shutters*, 163 F.3d 331, 335 (6th Cir.1999). In this case, the consent issue boiled down to a credibility determination between Anguiano's testimony and the testimony of numerous law enforcement officials who were present at the arrest site. The district court found the officers to be the more credible witnesses and we will accept the district court's findings of fact unless they are clearly erroneous. *United States v. Guimond*, 116 F.3d 166, 169. The district court had a reasonable basis for preferring the officers' testimony, as their stories were both plausible and consistent. Conversely, it is easy to see why the court rejected Anguiano's version of the events: Anguiano was extremely vague and noncommital about all of the most important issues, namely the circumstances surrounding the supposed government promise that fruits of the search could never be used against him. In addition, Anguiano has a strong interest in

---

[*] The Honorable Edmund P. Sargus, U.S. District Judge for the Southern District of Ohio, sitting by designation.

[1] The published opinion is filed under case number 98–6130.

[2] Jose Ramirez Sr. will be referred to as either "Ramirez" or "Ramirez Sr." Jose Ramirez Jr. will always be referred to as "Ramirez Jr."

presenting a version of events that would lead to the suppression of the evidence. As a result, the district court had good reason for concluding that the officers presented the more believable story.

■ Having made its factual decision concerning witness credibility, the district court correctly applied the law to the facts as set forth in the agents' testimony. Anguiano's claim that the officers told him that if he did not consent they would seek a warrant is unavailing because "[i]t is well settled that [an] agent's statement to the effect that he would obtain a warrant if [the suspect] did not consent to the search does not taint [the suspect's] consent to a search." *United States v. Salvo*, 133 F.3d 943, 954 (6th Cir.1998). In this case, the facts are even more favorable to the police officers, because one officer informed Anguiano that there was a possibility that the magistrate would not issue the warrant. As a result, the district court correctly applied both Supreme Court and Sixth Circuit precedent in reaching its conclusion that Anguiano's consent was voluntary. Consequently, we affirm the decision to admit evidence discovered during the government search of Anguiano's house.

2. The District Court's Evidentiary Decisions.

The defendants' next claim concerns the district court's decision to admit evidence (in the form of testimony from hotel record-keepers) of Ramirez Sr. and Anguiano's prior trips to Nashville, where most of the activities surrounding the failed drug deal took place. Ramirez Sr. also appeals the admission of witness testimony concerning Ramirez Sr.'s statements during a meeting at a Shoney's Restaurant in Nashville, specifically his comments that he had come to Nashville to collect money from another conspirator and that the price for the cocaine was a "good price" in

comparison to California prices. We affirm the district court's decision to admit all of the challenged evidence.

■ The trips to Nashville were properly admitted under Fed.R.Evid. 404(b) because they show that Ramirez Sr. and Anguiano had opportunity to engage in the conspiracy for which they were indicted. Rule 404(b)'s prohibition against admitting evidence of a defendant's prior acts allows admission of those acts when they show that the defendant had opportunity or intent to commit the crime charged. Furthermore, this court has repeatedly held that prior acts are admissible to show "an ongoing relationship between the conspirators and [the defendant's] 'knowledgeable participation' in the conspiracy," *United States v. Passarella*, 788 F.2d 377, 382 (6th Cir.1986), or "to establish the plausibility of two individuals from two distant regions entering into a criminal enterprise," *United States v. Blankney*, 942 F.2d 1001, 1018 (6th Cir.1991). In this case, the fact that Ramirez Sr. and Anguiano had made repeated trips to Nashville in the year preceding these drug transactions can be seen as evidence that they had both the opportunity and the intent to participate in a Nashville-based conspiracy. Consequently, the district court was correct in admitting the evidence of the defendants' previous travel to Nashville.

■ Ramirez Sr.'s conversation in Shoney's does not constitute Rule 404(b) evidence, because it cannot be defined as "other acts." Ramirez Sr. merely told coconspirators that he was in Nashville to collect on a debt from another conspirator, and that the price for cocaine was lower than for comparable drugs in California. Both of these statements are evidence of why Ramirez Sr. was in Nashville and decided to participate in the deal. Neither constitute separate acts outside the scope of the conspiracy itself. As a result, this testimony was correctly admitted as direct

evidence of the crime, consistent with the logic of *United States v. Barnes,* 49 F.3d 1144, 1149 (6th Cir.1995), which held that "Rule 404(b) does not apply where the challenged evidence is 'inextricably intertwined' with evidence of the crime charged in the indictment."

3. The District Court's Decision to Deny Ramirez Sr. a New Trial Based on Newly Discovered Evidence.

■■ Ramirez Sr. argues that he was entitled to a new trial based on new evidence in the form of a statement from Jose Ramirez Jr. that Ramirez Sr. was not involved in any drug trafficking. The district court was correct in rejecting this motion. The standard for granting a new trial on this basis is set forth in *United States v.. Glover,* 21 F.3d 133, 138 (6th Cir.1994), which requires that the new evidence (1) was discovered after the trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative and impeaching and (4) would likely produce an acquittal. We need not even consider the first three *Glover* requirements (though the district court also found that this evidence did not qualify as "newly discovered") because the fourth prong is clearly not satisfied. A letter from the defendant's son, himself the leader of the drug conspiracy for which the defendant stands charged, can hardly be viewed as credible evidence that Ramirez Sr. was not involved in the conspiracy. In light of other detailed testimony about Ramirez Sr.'s involvement in the conspiracy as well as substantial circumstantial evidence, it is highly unlikely that this new evidence would have produced an acquittal, and the district court was correct in rejecting the motion for a new trial.

4. The District Court's Drug Weight Determination.

■ Both defendants further challenge the district court's decision to sentence them based on ten kilograms of cocaine as opposed to three. Their theory is that the money they provided was only enough to purchase three kilograms of cocaine at the prices Gonzalez was charging. It is undisputed, however, that the whole deal was for ten kilograms. This court reviews a district court's drug quantity determination for clear error. *United States v. Gibbs,* 182 F.3d 408, 440 (6th Cir.1999). Under the U.S. Sentencing Guidelines § 1B1.3, a defendant is responsible for "all acts and omissions committed, aided, abetted. counseled, commanded, induced, procured, or willfully caused by [him]." In addition, in the case of jointly undertaken criminal activity, defendants are responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

Ramirez Sr.'s arguments are unavailing. The conversation at Shoney's was detailed enough that he was clearly aware that this transaction involved ten kilograms of cocaine, not three. As a result, he falls within the parameters of U.S. Sentencing Guidelines § 1B1.3 and was properly sentenced using ten kilograms of cocaine as the drug quantity. The district court was also correct in sentencing Anguiano using ten kilograms as the drug weight attributable to his actions. While there is no evidence that Anguiano actually *knew* that the transaction involved anything more than the $30,000 he provided to Ramirez Jr. and Magdaleno, he falls within § 1B1.3 even assuming this lower level of knowledge. Application note 2(a)(1) gives the example of "a defendant who transports a suitcase knowing that it contains a controlled substance and, therefore, is accountable for the controlled substance in the suitcase regardless of his knowledge of the ... amount of that controlled substance." That example is analogous to the facts involved here, where Anguiano knowingly facilitated a drug transaction, and is

therefore responsible for the entire amount of cocaine involved in that transaction. The district court's decision to sentence Anguiano using ten kilograms as the drug weight is therefore consistent with the Sentencing Guidelines. We have reversed Ramirez Sr.'s sentences in a published opinion, as noted in the first paragraph of this unpublished opinion.

### 5: Ramirez Sr.'s Motion for a Downward Departure

Ramirez Sr.'s final claim is that he is entitled to a downward departure as a minor or minimal participant in the conspiracy. The district court rejected this claim on the grounds that serving as financier is still an important role in a drug conspiracy, and this court reviews this type of factual decision for clear error. *United States v. Jackson,* 55 F.3d 1219, 1224 (6th Cir.1995). Although Ramirez Sr. was clearly not the leader of the conspiracy, his role in procuring the needed money was integral to its potential for success. As a result, the district court was correct in denying Ramirez Sr.'s motion for a downward departure on this basis.

Except for the reversal of Ramirez Sr.'s sentence in a separate published opinion, as noted above, the judgment of the district court is affirmed.