OPINION
Defendant-appellant Ronald E. Moller appeals from his conviction and sentence for Attempted Unlawful Sexual Conduct with a Minor. He raises three assignments of error. He first argues that the trial court erroneously classified him as a sexually oriented offender under R.C.2950.01 because an attempt to have unlawful conduct with a minor is not a sexually oriented offense under its provisions. He next contends that the trial court erred in denying his motion to suppress conversations between himself and the Xenia Police Department under Title III of the Omnibus Crime Control Act ("OCCA"), 18 U.S.C. § 2510 et seq., theFourth Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution. Finally, he claims that Xenia police officers lacked jurisdiction to initiate these conversations for the purpose of discovering possible criminals outside of their territory.
We disagree with these contentions. An attempt to engage in unlawful conduct with a minor is a sexually oriented offense under R.C.2950.01(D)(7), so the trial court properly classified him as a sexually oriented offender. Further, the trial court did not err in denying Moller's suppression request because there was no unlawful interception under 18 U.S.C. § 2511. Additionally, his conversations were not protected by the restrictions in the United States and Ohio constitutions against unreasonable searches and seizures, because he had no reasonable expectation of privacy with respect to conversations with a stranger over the Internet. Finally, in the conduct of their duties, Xenia police officers may initiate conversations with anyone in the world, so long as they do not arrest those individuals for crimes committed outside their territory. Here, Moller was arrested only after he had committed a crime within Xenia's geographical boundaries. Accordingly, the judgment of the trial court is Affirmed.
The Xenia Police Department created the Xenia Computer Crime Unit in 2000 to capture Internet criminals, including "travelers"[1] and child pornographers. A member of the unit entered an Internet chat room for older men on December 23, 2000, posing as a 14-year-old girl.[2]
Moller approached the "girl." The two chatted and eventually the conversation turned to sex. The "girl" told Moller that she liked sex and wanted to have sex with him. They exchanged pictures and agreed to meet. Moller then drove approximately 200 miles from his home, in Streetboro, to Xenia to meet "her." Instead of being greeted by a perky 14-year old girl, Moller was intercepted by Xenia police and arrested. He was indicted on one count of Attempted Unlawful Sexual Conduct with a Minor, pursuant to R.C.2907.04 and R.C.2923.02.
Moller originally pled not guilty. He then filed a motion to dismiss and to suppress evidence. He alleged that Xenia officers entrapped him by posing as an enticing 14-year old girl wishing to have sex with an older man. He also claimed that Xenia lacked jurisdiction to search for criminals outside of its territorial boundaries. He argued, further, that because his rights were violated under the Fourth Amendment to the United States Constitution and under 18 U.S.C. § 2510 et seq., any conversations should be suppressed. The court overruled his motion. He subsequently changed his plea to no contest. The court found him guilty, sentenced him to 5 years of community control sanctions, and classified him as a sexually-oriented offender. Moller now appeals from his conviction and sentence.
 II
Moller's first assignment of error is as follows:
 THE TRIAL COURT ERRED BY CLASSIFYING THE APPELLANT AS A SEXUALLY ORIENTED OFFENDER BECAUSE THE OFFENSE TO WHICH HE PLEADED GUILTY IS NOT LISTED UNDER R.C.2950.01
Moller argues that an attempt to engage in unlawful sexual conduct with a minor under R.C.2907.04 and R.C.2923.02 is not a sexually oriented offense under R.C.2950.01, and, thus, he cannot be classified as a sexually oriented offender. He is mistaken.
R.C.2950.01 defines a sexually oriented offense in relevant part as follows:
 (D)"Sexually oriented offense" means any of the following offenses:
 (2) Any of the following offenses involving a minor, in the circumstances specified:
 (a) A violation of section . . . 2907.04 of the Revised Code when the victim of the offense is under eighteen years of age;
* * *
 (7) An attempt to commit . . . any offense listed in D(1), (2), (3), (4), (5), or (6) of this section.
(Emphasis added.)[3]
Moller pled no contest to, and was found guilty of, a violation of R.C.2907.04 and R.C.2923.02. Section D(7) clearly defines a sexually oriented offense as an attempt to commit a violation of R.C.2907.04. Thus, the trial court did not err by classifying him as a sexually oriented offender under R.C.2950.01. Moller's first assignment of error is overruled.
 III
Moller's second assignment of error is as follows:
 THE TRIAL COURT ERRED BY FAILING TO SUPPRESS THE STATEMENTS OF THE APPELLANT OBTAINED BY THE XENIA POLICE DEPARTMENT OVER THE INTERNET
Moller sought to suppress statements that he made to Xenia police officers posing as a 14-year old girl in an AOL chat room and via e-mail. He argues that Xenia's use of the Internet to solicit and obtain inculpatory statements violates federal wiretap laws and his rights under the Fourth Amendment. In response, the State claims that the plain language of 18 U.S.C. § 2511 defeats Moller's wiretap claim, because there was no unlawful interception. Likewise, the State contends that Moller's Fourth Amendment rights were not violated.
 A. Wiretapping in Cyberspace
Title III of the OCCA, 18 U.S.C. § 2510 et seq., prevents unlawful interceptions and disclosures of wire or oral communications.18 U.S.C. § 2511.[4] There are exceptions to its general prohibitions, two of which are relevant to our analysis:
 (2)(c) It shall not be unlawful under this chapter [18 USCS §§ 2510 et seq.] for a person acting under color of law to intercept a wire, oral, or electronic communication, where such a person is a party to the communication or one of the parties to the communication has given prior consent to such interpretation.
 (d) It shall not be unlawful under this chapter [18 U.S.C.S §§ 2510 et seq.] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.
Id. (emphasis added).
The statute does provide mechanisms for court-ordered surveillance and disclosures of those interceptions. 18 U.S.C. § 2518. If a communication is intercepted in violation of the statute's provisions, then it may not be used in any proceeding or trial:
 Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or any other authority of the United States, a State or a political subdivision thereof if the disclosure of that information would be in violation of this chapter [18 U.S.C.S §§ 2510 et seq.].
18 U.S.C. § 2515 (codifying exclusionary rule).
Individuals claiming a violation of the statute's provisions may file a motion to suppress the contents of an intercepted communication if any of the following circumstances apply: (1) the interception is unlawful; (2) the order authorizing the interception is insufficient; or (3) the interception was not made in conformance with the order of authorization. 18 U.S.C. § 2518(10)(a).
Moller contends that Xenia failed to seek prior authorization under18 U.S.C. § 2518 before intercepting his communications to the "girl." Thus, any conversations that they were privy to must be excluded under 18 U.S.C. § 2515. We disagree. Although Congress provided that evidence acquired by policemen through the interception of wire or oral communications is inadmissible unless the officers obtain judicial authorization under 18 U.S.C. § 2518, these provisions are inapplicable when the officer is a party to the conversation acting under color of law. 18 U.S.C. § 2511(2)(c)("It shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication, where such a person is a party to the communication. . . ."); United States v. Passarella (6th Cir. 1986),788 F.2d 377, 379. Here, Xenia was acting under color of state law when investigating Internet crime, and its officers, while posing as a minor, were parties to the communication.
Anticipating the interposition of this exclusion, Moller argues that the officers were not acting under color of state law because they had no prior judicial authorization to intercept these statements. While we disagree with this contention, even if we were to agree, the interception was still lawful because the police officers were parties to the communication. 18 U.S.C. § 2511(2)(d)("It shall not be unlawful under this chapter . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication. . . ."); cf. Goode v. Goode (Mar. 14, 2000), D. Delaware No. 99-423-SLR, unreported. Because the interceptions were not unlawful, the trial court properly refused to suppress them under 18 U.S.C. § 2518.
Of course, Moller was under the misapprehension that the recipient of his communications was a 14-year-old girl, not a Xenia police officer. In this respect, he is no different than anyone who has communicated with an undercover police officer over the telephone, believing that the officer is, for example, a purchaser or seller of illegal drugs. The fact that the intended recipient of a communication turns out to have substantially different personal characteristics than the sender had believed does not make the intended recipient an interceptor of the communication. Otherwise, it would be difficult to know where to draw the line. The sender might believe, for example, that the recipient is willing to engage in criminal acts, only to find out, to the sender's detriment, that the recipient is a law-abiding citizen imbued with a sense of duty to report the communication to the police. The sender's false belief concerning the personal characteristics of the intended recipient does not make the latter an interceptor of the communication.
 B. Fourth Amendment Rights in Cyberspace
The Fourth Amendment to the United States Constitution protects a person from unreasonable searches and seizures.[5] To assert a right to exclude otherwise admissible evidence under the Fourth Amendment's exclusionary rule a defendant must demonstrate a seizure; to do so, he must show both a subjective and objective expectation of privacy in the evidence that he wishes to exclude. Katz v. United States (1967),389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507. Similarly, individuals who challenge the validity of a search or seizure of statements made during a conversation may only assert a claim under the Fourth Amendment to suppress that evidence if they have a reasonable expectation of privacy in the contents of the conversation. Cf. United States v. Charbonneau
(S.D.Ohio 1997), 979 F. Supp. 1177, 1184-85. An individual'sFourth Amendment rights can be violated by deceptive intrusions into a constitutionally protected area like a conversation. Hoffa v.United States (1966), 385 U.S. 293, 17 L.Ed.2d 374, 87 S.Ct. 408; but the fundamental nature and scope of the Fourth Amendment's protections does not extend to conversations an individual engages in with a stranger who may be posing as an undercover agent:
 What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile. There he is protected from unwarranted governmental intrusion. And when he puts something in his filing cabinet, in his desk drawer, or in his pocket, he has the right to know it will be secure from an unreasonable search or an unreasonable seizure. . . . Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.
Id. at 301-302.
Likewise, and despite Moller's argument to the contrary, individuals possess no reasonable expectation of privacy in statements made to an unknown individual over the Internet:
 [A] sender of e-mail runs the risk that he is sending the message to an undercover agent. . . . "The risk of being . . . deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak." Id. at 303.
Charbonneau, supra (quoting Hoffa, supra).
Moller assumed the risk of speaking to an undercover agent when he engaged in inappropriate chat room conversations and e-mail with a person he believed to be a minor looking for sex with an older man. He took the risk that the "girl" he thought he was speaking to was not who she said she was, and, unfortunately for him, that risk materialized. This does not mean these statements are protected by the Fourth Amendment.
Moller argues that State v. Pi Kappa Alpha Fraternity (1986),23 Ohio St.3d 141, should govern the resolution of this issue. There the Court suppressed evidence obtained by liquor officers who gained entry to a fraternity house by posing as alumni. The court reasoned:
 Pursuant to Section 14, Article I of the Ohio Constitution, and in the absence of any judicially recognized exception to the warrant requirement, government officers are not privileged to deceptively gain entry into the private home or office of another without a warrant, where such home or office is not a commercial center of criminal activity, and where the invitation to enter the private home or office was not extended by the occupant for the purpose of conducting illegal activities.
(Emphasis added.)
The case before us is distinguishable. Cf. State v. Posey (1988),40 Ohio St.3d 420, 427-29. There is a distinction between the privacy that one can expect in one's home and the privacy that one can expect in a computer chat room. No matter how much time one spends visiting the chat room, one is still a visitor, not a resident. Moreover, even if we were to concede that the officers gained entry to Moller's home through deception, which we do not, another key distinction makes this case significantly different from Pi Kappa Alpha. In that case, agents directly approached the house manager to gain entry into the house. Here the "girl" entered the chat room and waited to be approached. Moller then initiated a conversation with "her."
We conclude that a better analogy is drawn by extending the logic ofHoffa to the present case. Like Hoffa, Moller took the risk that the 14-year-old he thought he was talking to, and planning to engage in sex with, was not who she seemed to be, but was in reality a police officer. This is a risk that anyone visiting a chat room necessarily takes when communicating with strangers. It is easy for anyone using the Internet to adopt a false persona, whether for purposes of law enforcement, or for other and nefarious purposes. It was unreasonable for Moller to assume that his unsuitable conversations would be kept private. Thus, in our view, his statements made in the chat room to a stranger are not entitled to protection under the Fourth Amendment. Because they are not, the trial court did not err by refusing to suppress this evidence under the exclusionary rule. Moller's second assignment of error is overruled.
This does not mean, however, that an individual may never claim aFourth Amendment violation based upon a reasonable expectation of privacy in a conversation over the Internet. To the contrary, our opinion only speaks to those instances where an individual speaks to a stranger via the Internet. Our opinion does not address what objectively reasonable expectations of privacy an individual might have in circumstances significantly different from those presented in the case before us. Query, for example, an expectation of privacy in a conversation that one reasonably believes one is having with a known acquaintance, perhaps using password, or even encryption, technology, where police officers have defeated the precautions used to protect the communication, and are posing as the known acquaintance.
 IV
Moller's third assignment of error is as follows:
 THE XENIA POLICE DEPARTMENT DID NOT HAVE THE JURISDICTION TO OBTAIN INCULPATORY STATEMENTS FROM THE APPELLANT OVER THE INTERNET
Moller claims that Xenia police officers had no power to initiate Internet conversations outside of the municipal boundaries of Xenia, with an individual over 200 miles away, which led to an arrest and prosecution, under Section III, Article XVIII of the Ohio Constitution. Furthermore, Moller points to a recent amendment to R.C.2907.07, Ohio's importuning statute, codified at R.C. 2907.07(F), which now expressly prohibits using a telecommunications device to solicit sexual activity that either originates or is received in this state with a police officer posing as an underage person, but which was not in effect in 2000 when officers initiated conversations with him, to support his argument that Xenia police officers had no authority to engage in these activities. In response, the State alleges that police officers may engage in conversation with anyone, and that Xenia had jurisdiction pursuant to R.C.2901.12 to arrest and prosecute Moller based on his entry into Xenia to meet and have sex with the "girl."
We agree with the State. Cf. United States v. Moore (9th Cir 1998),136 F.3d 1343, 1345 (appellate court declined to address appellant's argument that trial court erred by failing to dismiss a claim relating to his agreement via Internet communication to teach an individual's three children about sex because of the police officers' outrageous behavior in luring him from Washington to California). The Xenia police can talk to anyone in the world. They just cannot arrest individuals outside of their territory, by reason of Section III, Article XVIII of the Ohio Constitution, which provides as follows:
 Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and similar regulations, as are not in conflict with general laws.
Moller, however, came to Xenia to engage in sex with a minor. Once he entered the city limits and committed at least one element of the alleged offense, Xenia police were well within their powers, under Section III, Article XVIII of the Ohio Constitution, to arrest and prosecute him.
As far as the amendment to R.C. 2907.07 is concerned, Moller was not charged with soliciting another to engage in sexual activity with him; he was charged with attempting to go beyond solicitation and actually to engage in sexual conduct with an underage girl, in violation of R.C.2907.04(A).
Moller's third assignment of error is overruled.
 V
All of Moller's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.
[1] The term travelers refers to individuals who travel a distance to engage in sexual relations with a minor.
[2] For a detailed explanation of the various forms of Internet communication see Note, Keeping Secrets in Cyberspace: EstablishingFourth Amendment Protection for Internet Communication (1997), 110 Harvard L. Rev. 1591, 1592-94.
[3] The statute has subsequently been amended. Former provision R.C.2950.01(D)(7) is now R.C.2950.01(D)(1)(g).
[4] See also R.C.2933.51 et seq. (Ohio's wiretapping statutes).
[5] Article I, Section 14 of the Ohio Constitution is similar.