**UNITED STATES of America, Appellee,**

**v.**

**Robert C. STIVER, Appellant.**

**No. 92–3661.**

United States Court of Appeals,
Third Circuit.

Argued July 1, 1993.

Decided Nov. 12, 1993.

Richard C. Schomaker (argued), Pittsburgh, PA, for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Paul J. Brysh, Bonnie R. Schlueter (argued), Asst. U.S. Attys., Pittsburgh, PA, for appellee.

Before: BECKER, ALITO, and ROTH, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

Robert C. Stiver appeals his conviction for a drug offense, contending that the district court erroneously denied his motion to suppress evidence seized from his residence and automobile pursuant to a state warrant. Stiver argues: (1) that the warrant was not supported by probable cause as that term is understood in Pennsylvania law, (2) that the state officers who executed the warrant violated Pennsylvania's "knock and announce" rule, and (3) that the officers exceeded their authority by answering his telephone and speaking with some of his drug customers when they called to place orders during the execution of the warrant. We hold that Stiver's suppression motion was properly denied, and we therefore affirm the judgment of the district court.

### I.

On November 20, 1991, a Pennsylvania magistrate issued a warrant to search Stiver's apartment, automobile, and person, as well as the person of the woman with whom he was living. The warrant application was based on an affidavit co-signed by two municipal police officers. The affidavit stated that on or about November 1 a reliable informant had told the officers that Stiver was selling heroin from his apartment. The affidavit explained that "[t]his informant knows this to be true because he/she has been to that location on several occasions and has purchased heroin for his/her personal use, from Stiver as recently as a week prior to giving this information to affiants." Furthermore, the affidavit stated that "on or about 11/18/91 this informant was in Robert Stivers (sic) residence ... and saw Stiver selling heroin to others." The affidavit added that on this occasion Stiver "offered to sell heroin to the informant" and told the informant to return if the informant subsequently wanted to make a purchase. In addition, the affidavit stated that, according to the informant, Stiver drove a particular automobile and "uses this vehicle to sell his heroin from." The affidavit elaborated that "[t]he informant said that he has seen Stiver keep his heroin in the trunk of his vehicle when he is in his apartment to keep the police from finding it in case his apartment is raided." Moreover, the officers stated in the affidavit that they had observed this automobile in front of Stiver's residence "on a daily basis" and that they had ascertained that Stiver had a criminal record for prior drug offenses.

After the warrant was issued, approximately 12 state and local officers went to Stiver's apartment at about 11:20 p.m. to execute the warrant. One of the officers knocked on the door and announced, "Police officers. Search warrant." The officer then heard "hurried, heavy" footsteps moving away from the door. Consequently, five to ten seconds after announcing their presence, the officers broke down the door. The officers then seized heroin from Stiver's pocket and from that of an associate. The officers also seized 13 packets of heroin found in the residence and 270 packets from Stiver's automobile, which was parked in front of the building. The officers remained in the apartment for approximately one hour and twenty minutes. During that time, the telephone rang 10 to 12 times, and the officers answered the phone. The callers generally asked for "Bugsy," which was Stiver's nickname. The officers generally identified themselves using a different first name and asked the callers, "What do you need?" The callers then usually responded by asking for things, such as "bags," that were identified at trial as references to drugs.

Stiver was originally arrested on state charges, but he was subsequently charged in a one-count federal indictment with posses-

sion of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). He moved to suppress the fruits of the search of his residence and automobile, but after a hearing the district court denied the motion. The court held that the search warrant affidavit contained "timely and specific" information and that it established probable cause to search the apartment and car. The court further held that the warrant had been properly executed. The court found that the police had knocked and announced their presence and that "[f]orced entry was appropriate ... due to the exigent circumstances ..., namely the hurried steps that were heard by the police officers and the delay in opening the door."

After a jury trial, Stiver was convicted and sentenced and took the current appeal.

## II.

■ Stiver argues that the validity of the search warrant and of the method in which it was executed must be judged under Pennsylvania law, since the warrant was applied for, issued, and executed by state officers, and since he was originally charged with state offenses. Stiver contends that under Pennsylvania law the warrant was not supported by fresh probable cause concerning the presence of drugs in his car, and he notes that the Pennsylvania Supreme Court has declined to adopt the good faith exception set out in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). Stiver likewise argues that the execution of the search warrant must also be assessed under Pennsylvania law.

Stiver's argument that Pennsylvania rather than federal law governs the validity of the search in this case is foreclosed by our decision in *United States v. Rickus*, 737 F.2d 360 (3d Cir.1984). In that case, the defendant argued that the search of the trunk of his car should be tested under Pennsylvania, not federal, law. We disagreed, holding that

"evidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law." *Id.* at 363–64.[1] We added:

> We are not insensitive to the claim that we should not encourage state officials to violate principles central to the state's social and governmental order. But sanctions already exist to control the state officer's conduct. He is "punished" by the exclusion of evidence in the state criminal trial, and the state can, if it chooses, enforce its policies with respect to its own officers by permitting civil suits. We are persuaded that the additional deterrent effect to be gained from excluding this evidence in federal trials for federal offenses is small, and is far outweighed by the costs to society of excluding the evidence.

*Id.* at 364 (citations omitted).

We noted precedents concerning the applicability of state law to arrests made by state officers (*see, e.g., United States v. Di Re*, 332 U.S. 581, 587–92, 68 S.Ct. 222, 225–27, 92 L.Ed. 210 (1948); *United States v. Day*, 455 F.2d 454 (3d Cir.1972)), but we did not find those precedents apposite. *United States v. Rickus*, 737 F.2d at 364 n. 2. Stiver's brief does not suggest any basis for distinguishing our holding in *Rickus*. Accordingly, we will examine Stiver's arguments regarding the validity and execution of the search warrant under federal standards. We add, however, that we do not believe that the outcome of this appeal would be any different if Pennsylvania law were applied.[2]

## III.

■ Under federal law, the information supporting probable cause was not stale. As we recently explained in *United States v. Harvey*, 2 F.3d 1318 (3d Cir.1993):

> Age of the information supporting a warrant application is a factor in determining probable cause. If too old, the information

---

**1.** *See also United States v. Shaffer*, 520 F.2d 1369, 1372 (3d Cir.1975), *cert. denied*, 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 640 (1976); *United States v. Armocida*, 515 F.2d 49, 51–52 (3d Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975).

**2.** *See infra* notes 3 and 5 and accompanying text.

is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. "The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant." Rather, we must also examine the nature of the crime and the type of evidence.

*Id.* at 1322 (citations omitted).

Here, the information concerning the presence in the apartment of drugs and evidence of drug offenses was very fresh. According to the affidavit, the informant had indicated that Stiver was regularly selling heroin from his apartment, that the informant had personally made several purchases, including one in late October, and that the informant had seen Stiver selling heroin in this apartment as recently as November 18—just three days prior to the issuance of the warrant on November 21. Moreover, according to the affidavit, Stiver had told the informant on November 18 to return to the apartment if he wanted to purchase heroin at a later time. Taken together, these facts clearly provided probable cause to believe that drugs and evidence of drug offenses remained in Stiver's apartment on November 21, when the warrant was issued and executed.

Although the affidavit did not include information that drugs or evidence of drugs had been seen in Stiver's automobile on a specified date, the likelihood that drugs were present in the car on the date of the warrant could easily be inferred. As already noted, there plainly was probable cause to believe that Stiver was still making drug sales from his apartment on that date. Moreover, according to the affidavit, the informant reported that "Stiver usually uses his vehicle to sell heroin from" and that the informant had "seen Stiver keep his heroin in the trunk of his vehicle when he is in his apartment to keep the police from finding it in case his apartment is raided." Thus, putting together the fact that Stiver was probably selling heroin from his apartment on November 21 and the fact that Stiver had the practice of usually storing heroin in his car when he was in his apartment, the magistrate clearly had probable cause to conclude that drugs or evidence of drug dealing was present in Stiver's car on the date when the warrant was issued.[3]

## IV.

The defendant next argues that the evidence found in his apartment should have been suppressed because the officers who executed the warrant broke down the door rather than waiting for someone to answer. We disagree.

Since we must judge the legality of the execution of the search warrant under federal law and since there is no federal statute governing the execution of warrants by state officers, the standard we must apply is that imposed by the Fourth Amendment as made applicable to the states by the Fourteenth Amendment. We discussed this standard in detail in *United States v. Nolan*, 718 F.2d 589, 598–602 (3d Cir.1983). We stated that the prohibitions of the Fourth Amendment and the prohibition of the common law rule codified in 18 U.S.C. § 3109[4] (which applies

---

**3.** As noted, the defendant argues that the information regarding his car did not provide an adequate basis for a search warrant under Pennsylvania law. He argues that Pennsylvania law requires that "the time frame as to when the informant obtained the information in question must be specified in the affidavit." Appellant's Br. at 14.

In support of this argument, the defendant chiefly relies on *Commonwealth v. Edmunds, supra.* As we read *Edmunds* and related Pennsylvania cases, however, they do not stand for the proposition that information is stale even if a judicial officer may reasonably infer from the circumstances that the information still provides probable cause to believe that evidence is located in the place to be searched. *See also Commonwealth v. Kalinowski*, 303 Pa.Super. 354, 449 A.2d 725 (1982) and *Commonwealth v. Conner*, 452 Pa. 333, 305 A.2d 341 (1973). Consequently, while we apply federal law in this case, we do not believe that the outcome would be different if Pennsylvania law were applied.

**4.** This provision states:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

to federal officers) overlap but are not coextensive. *Id.* at 600. We explained that "some conduct authorized by section 3109 may nonetheless violate the Constitution; conversely, some conduct permissible under the Constitution may be barred by section 3109." *Id.* We suggested that the Fourth Amendment does not impose a specific rule governing forced entries to execute search warrants but rather imposes a general requirement of reasonableness, informed by the goals of preventing undue invasion of privacy and destruction of private property. *Id.* at 602.

In light of the overlap between the common law rule and the Fourth Amendment, we begin our analysis of the question presented in this case by noting that the officers' conduct complied with the common law rule. Under that rule, an officer executing a warrant could enter without waiting to be admitted "where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." *United States v. Kane,* 637 F.2d 974, 978 (3d Cir.1981) (quoting *Ker v. California,* 374 U.S. 23, 47, 83 S.Ct. 1623, 1636, 10 L.Ed.2d 726 (1963) (Brennan, J., concurring and dissenting)). *See also Nolan,* 718 F.2d at 596; *United States v. Davis,* 461 F.2d 1026, 1034 (3d Cir.1972). Here, the officers had a strong basis for believing that the defendant was involved in the drug trade and that drugs or other evidence could be readily destroyed if entry was delayed. When they announced their presence, they heard heavy and hurried footsteps leading away from the door. Under these circumstances, the officers did not violate the common law rule by entering without waiting for someone to open the door. *See, e.g., United States v. Bonner,* 874 F.2d 822, 824 (D.C.Cir.1989); *United States v. Allende,* 486 F.2d 1351, 1353 (9th Cir.1973), *cert. denied,* 416 U.S. 958, 94 S.Ct. 1973, 40 L.Ed.2d 308 (1974); *United States v. DeLutis,* 722 F.2d 902, 909 (1st Cir.1983).

■ Nor do we think that there was a Fourth Amendment violation. While we recognized in *Nolan* that the Fourth Amendment may prohibit some conduct that the common law rule allows, this case does not involve such an instance. In this case, the officers' conduct was reasonable under the circumstances, and we therefore hold that the officers did not violate the Fourth Amendment in forcibly entering the defendant's apartment.[5]

## V.

■ The defendant's final argument is that the officers exceeded their authority under the warrant by answering his telephone and taking orders from his customers.[6] In our view, however, the search warrant authorized the officers' conduct.

As the Seventh Circuit recently observed, officers executing a search warrant are "required to interpret it," and they are "not obliged to interpret it narrowly." *Hessel v. O'Hearn,* 977 F.2d 299, 302 (7th Cir.1992). Here, as noted earlier, the warrant authorized the officers to search for and seize,

---

**5.** While the defendant argues that the officers violated Pennsylvania's "knock and announce" rule, this argument appears to us to be incorrect. Under Pennsylvania law, police officers may break down a door in carrying out a search or arrest if they "have reason to believe that an announcement prior to entry would imperil their safety" or if they "have reason to believe that evidence is about to be destroyed." *Commonwealth v. Chambers,* 528 Pa. 403, 598 A.2d 539, 541 (1991). Thus, it appears that the officers' conduct in this case comported with state law.

**6.** While we have not previously addressed this argument, many other courts have considered similar contentions, and it appears that these arguments have been uniformly rejected, albeit based on differing rationales. *See United States*

*v. Passarella,* 788 F.2d 377, 380–81 (6th Cir. 1986) (collecting cases); *United States v. Ordonez,* 737 F.2d 793, 810 (9th Cir.1984); *United States v. Vadino,* 680 F.2d 1329, 1335 (11th Cir. 1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983); *United States v. Campagnuolo,* 592 F.2d 852, 861–63 (5th Cir. 1979). Our decision in this case should not, however, be interpreted to mean that it is always proper for officers to answer a telephone when it rings while the officers are executing a search warrant. We express no view about the legality of such conduct under factual circumstances different from those present here. We hold only, as explained in text, that the warrant in this case authorized the officers to answer the telephone.

among other things, "all drug paraphernalia." In ordinary usage, the term "paraphernalia" is defined to mean "equipment [and] apparatus ... used in or necessary for a particular activity."[7] *The Random House Dictionary of the English Language* 1408 (Second Edition 1987). *See also Webster's Third New International Dictionary* 1638 (1971). In light of the fact that the officers had ample cause to believe that the defendant had been using the apartment to make heroin sales, including sales to individuals who wanted the drug for personal use, the officers had an entirely reasonable basis for concluding that the defendant's telephone was a piece of "equipment" or "apparatus" that was "used in or necessary for [the defendant's] particular activity," namely, selling drugs to users and others from his residence. The officers therefore acted properly in "searching"[8] the telephone, i.e., answering it.

We also believe that the officers' conduct was authorized by the portion of the warrant permitting them to search for "[a]ny items to prove residency." Telephone calls for the defendant at the premises would provide evidence that he resided there. Thus, the officers were justified in answering the telephone to obtain evidence regarding the defendant's residence.

## VI.

For the reasons explained above, we hold that the district court properly denied the defendant's motion to suppress. The judgment of the district court is therefore affirmed.

---

7. Federal and state criminal statutes define "drug paraphernalia" more narrowly, 21 U.S.C. § 863 (1993) and Pa.Stat.Ann. tit. 35, § 780–102(b) (1993), but these definitions do not help us to interpret the term as it is used in the search warrant. "Drug paraphernalia" can be defined in many ways, and there is no reason for us to interpret the phrase to accord with its definition in criminal statutes that played no role in these proceedings.

8. The Sixth Circuit has held that the answering of a telephone under circumstances such as those that existed here does not invade any legitimate expectation of privacy of the person in whose residence the telephone is located.. *See Passarella,* 788 F.2d at 379. The Sixth Circuit termed this question "not without difficulty," and we do not reach it here. Particularly in light of the Supreme Court's subsequent decision in *Arizona v. Hicks,* 480 U.S. 321, 324–25, 107 S.Ct. 1149, 1152–53, 94 L.Ed.2d 347 (1987), we assume for the sake of argument that the answering of the telephone in this case was a search, but we hold, as explained in text, that the search warrant authorized this search.