**UNITED STATES of America,**

v.

**Domingo DE LA PAZ, Rafael Caba, Jose Martinez, and Raul Romero Bulton, Defendants.**

**No. 98 CR 1237 (MBM).**

United States District Court, S.D. New York.

March 24, 1999.

Maria P. Horn, Asst. U.S. Atty., Mary Jo White, United States Attorney for the Southern District of New York, William Silverman, Assistant United States Attorney, New York City, for U.S.

Edward M. Kratt, New York City, for Domingo De La Paz.

Lawrence K. Feitell, New York City, for Raul Romero Bulton.

OPINION AND ORDER

MUKASEY, District Judge.

Raul Romero Bulton moves to suppress evidence of post-arrest telephone calls to his cellular telephone. Bulton is charged with conspiracy to traffic in narcotics, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 846. Bulton argues that an agent of the Federal Bureau of Investigation ("FBI") violated his Fourth Amendment rights by answering his cellular telephone, without his consent and without a warrant, when it rang between the time of his arrest and the time of his arraignment.

For the reasons stated below, the motion is denied.

## I.

The facts relevant to the present motion can be stated briefly. Bulton was arrested on October 7, 1998, at approximately 1 p.m.,[1] following a three-month investigation into alleged drug dealing activities. At the time of Bulton's arrest, the arresting agents searched him and found in his possession a cellular telephone, which they seized as evidence. Thereafter, the agents took Bulton to FBI headquarters, where they began processing his arrest. While the agents were doing so—at approximately 4 p.m.—Bulton's cellular telephone rang. Altogether, the telephone rang at least nine times. Each time, without seeking Bulton's consent and without a warrant, one of the agents answered the telephone. Each time, the person on the other end of the call asked for "Nino," a name which the government contends was used by Bulton in the course of his illegal activities and which appears in drug ledgers that were earlier seized by the government. Later on the day of Bulton's arrest, the agents inventoried the telephone and placed it in storage. It has not been answered since.

## II.

Bulton does not seek to suppress the cellular telephone itself, conceding that it was lawfully seized incident to his arrest. *Cf. United States v. Hernandez,* 738 F.Supp. 779, 779 (S.D.N.Y.1990) (upholding, in a drug case, the seizure of a cellular telephone as incident to a lawful arrest). Instead, he seeks to suppress evidence of the post-arrest telephone calls, on the ground that answering his cellular telephone constituted a search for which the agents required a warrant. This issue— whether, or under what circumstances, officers can, without a warrant, answer a cellular telephone seized pursuant to an arrest—appears to be one of first impression. *But cf. United States v. Kim,* 803 F.Supp. 352, 361–63 (D.Haw.1992) (holding that law enforcement officers may not, without a warrant, lawfully answer a cellular telephone "seized pursuant to federal forfeiture law"), *aff'd,* 25 F.3d 1426 (9th Cir.1994); *People v. Lucas,* 188 Mich.App. 554, 470 N.W.2d 460, 471–72 (1991) (upholding admission of calls to a car telephone answered by a police officer following arrest of the defendant).

Whether a warrant was required to answer Bulton's cellular telephone depends, first, on whether Bulton "can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (citing cases); *accord Minnesota v. Carter,* —— U.S. ——, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998). Although no court has answered this question with respect to a cellular telephone, several courts have with respect to conventional telephones, and have reached divergent conclusions. *Compare, e.g., United States v. Sangineto–Miranda,* 859 F.2d 1501, 1513–14 (6th Cir.1988) (holding that no legitimate expectation of privacy is implicated when police officers answer a telephone while lawfully on the premises); *United States v. Passarella,* 788 F.2d 377, 379–81 (6th Cir.1986) (same); *United States v. Vadino,* 680 F.2d 1329, 1335 (11th Cir.1982) (same); *United States v. Kane,* 450 F.2d 77, 84–85 (5th Cir.1971) (same), *with United States v. Ordonez,* 737 F.2d 793, 810–11 (9th Cir.1983) (holding, by necessary implication, that one can challenge the answering of one's telephone under the Fourth Amendment); *United States v. Gallo,* 659 F.2d 110, 114 (9th Cir.1981) (same); *United States v. Fuller,* 441 F.2d 755, 760 (4th Cir.1971) (same); *cf. United States v. Stiver,* 9 F.3d 298, 302–03 & n. 8

---

**1.** There is some dispute about the precise time of Bulton's arrest. For the purposes of this motion, however, the government accepted Bulton's assertion that he was arrested at 1 p.m. (*See* 3/9/99 Hearing Transcript at 44) I will do the same.

(3d Cir.1993) (assuming, *arguendo*, that answering another's telephone implicates a legitimate expectation of privacy and explicitly questioning whether *Passarella*, which found otherwise, remains good law). Notwithstanding that some courts have held otherwise, I believe for the reasons set forth below that answering Bulton's telephone did implicate a legitimate expectation of privacy.

The courts which have held that a person does not have a legitimate expectation of privacy in calls to his telephone have rested that conclusion on the ground that a person does not have a privacy interest in conversations to which he is not a party. *See, e.g., Sangineto–Miranda*, 859 F.2d at 1513–14; *Passarella*, 788 F.2d at 379–80; *Vadino*, 680 F.2d at 1335; *Kane*, 450 F.2d at 84–85. So long as the government agents are lawfully on the defendant's premises, these courts have held, the agents may answer his telephone freely. *See, e.g., Passarella*, 788 F.2d at 381.

If valid, this rationale presumably would apply to a cellular telephone as well—at least insofar as the telephone was lawfully in the possession of the government, as it was here. However, this rationale appears to me unpersuasive, because it confuses the privacy interest invaded by a search alone with the interest in whatever is uncovered by a search. That is to say, asserting that a defendant has no privacy interest in the substance of a conversation between a law enforcement agent and a caller does not resolve whether the defendant has a privacy interest in whether that conversation should occur in the first place. The relevant question is not whether a search necessarily uncovers something of a personal or private nature, but rather whether it might—and whether one must invade a legitimate privacy interest in order even to find out. *Cf. Arizona v. Hicks*, 480 U.S. 321, 325, 107 S.Ct. 1149, 94

L.Ed.2d 347 (1987) ("It matters not that the search uncovered nothing of any great personal value to respondent—serial numbers rather than (what might conceivably have been hidden behind or under the equipment) letters or photographs. A search is a search, even if it happens to disclose nothing but the bottom of a turntable."). Whatever Bulton's interest—or lack of it—in the actual conversations that took place between those trying to call him and the agents, he had a legitimate privacy interest in the fact that those calls were received and in the identity of the callers. These interests were necessarily invaded by the agents' actions—invasions which implicate Fourth Amendment rights.

To illustrate the point, consider the following. A tenant normally gives the landlord a right of access to his apartment, at least in cases of emergency. In the event of a leak, therefore, it would be reasonable—and lawful—for the landlord to authorize a plumber to enter the apartment in order to fix the leak. The plumber would not be an intruder in the apartment; his presence would be lawful. Notwithstanding the lawfulness of the plumber's presence, however, he would not have license to answer the telephone if it were to ring. If he were to do so without the tenant's consent, he would be acting unreasonably, and the tenant would be amply justified in complaining. What the tenant would be complaining about is an invasion of his privacy. Changing the facts to make the nonintruder a police officer does not change the analysis or the result. That the officer may have a reasonable investigative purpose in answering the telephone might be relevant to whether the act is ultimately justifiable—an issue treated below—but that is irrelevant to the question of whether the resident has a legitimate privacy interest in his telephone calls.[2]

2. The plumber example reveals also that the Fifth, Sixth and Eleventh Circuits may well have overstated the case in declaring that a person does not have any privacy interest in a

conversation to which he is not a party. A tenant would be justified in feeling even more violated were he to learn, for example, that the plumber had answered the telephone and

My conclusion that the government did invade a legitimate privacy interest by answering Bulton's cellular telephone is further reinforced by reference to another line of cases, involving electronic pagers. In these cases, courts have consistently held that the owner of an electronic pager has a legitimate privacy interest in the numerical codes transmitted to the device, even when the transmissions are received while the pager is in the government's lawful possession. *See, e.g., United States v. Ortiz,* 84 F.3d 977, 984 (7th Cir.1996); *United States v. Reyes,* 922 F.Supp. 818, 832–33 (S.D.N.Y.1996); *United States v. Lynch,* 908 F.Supp. 284, 287 (D.V.I.1995); *United States v. Chan,* 830 F.Supp. 531, 534–35 (N.D.Cal.1993); *United States v. Blas,* No. 90–CR–162, 1990 WL 265179, at \*21 (E.D.Wis. Dec.4, 1990). *But cf. United States v. Meriwether,* 917 F.2d 955, 958–59 (6th Cir.1990) (holding that a person who transmits a number to another party's electronic pager does not have a legitimate expectation that his communication will remain private). I see no basis for distinguishing between the hand-held personal communications devices involved in those cases and the hand-held personal communications device in this case. Indeed, if anything, the argument for privacy is even greater in cases involving cellular telephones insofar as the information communicated is likely to be at once more significant and more personal than a numerical code.[3]

### III.

■ Because Bulton had a legitimate expectation of privacy in the calls to his cellular telephone, the next inquiry is whether answering his telephone without a warrant violated the Fourth Amendment. Unless some exception to the general warrant requirement applies, the evidence of the calls would have to be suppressed.

The government reasons that no warrant was necessary for the agent to answer Bulton's telephone by analogy to cases that allow law enforcement officers to answer the telephone when searching premises pursuant to a search warrant. *See, e.g., Stiver,* 9 F.3d at 302–03; *Sangineto–Miranda,* 859 F.2d at 1513–14; *Ordonez,* 737 F.2d at 810–11; *Vadino,* 680 F.2d at 1335; *Gallo,* 659 F.2d at 114; *United States v. Campagnuolo,* 592 F.2d 852, 861–63 (5th Cir.1979); *Kane,* 450 F.2d at 84–85; *Fuller,* 441 F.2d at 760; *United States v. Seinfeld,* 632 F.Supp. 622, 624 (E.D.N.Y. 1986); *cf. Passarella,* 788 F.2d at 378–82 (allowing a government agent to answer a residential telephone when he was lawfully present pursuant to an arrest warrant). The government appears to infer from these cases a broad exception to the warrant requirement for telephone calls. This inference is unjustified.

In the conventional telephone cases, courts have offered three rationales for admitting evidence of telephone calls.

carried on a conversation with his lover or a business colleague—an invasion of privacy that would be made all the worse had the plumber permitted the caller to assume that he was the tenant. *Cf. Passarella,* 788 F.2d at 380 (holding that whether the agent "permitted the caller to assume" that he was the defendant is immaterial, and sanctioning "a certain degree of deception or subterfuge on the part of law enforcement authorities"). In any event, because I have concluded that answering Bulton's telephone by itself implicates Fourth Amendment rights, I need not and do not decide this issue.

**3.** In *Sangineto–Miranda, Passarella, Vadino* and *Kane,* unlike here, the defendants challenged the answering of their telephones pur-

suant to both the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. In holding that answering the telephone calls did not violate a legitimate expectation of privacy, it may be that these courts read Fourth Amendment standards as simply coextensive with those of Title III, which explicitly provides that "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication." 18 U.S.C. § 2511(2)(c). The statutory prohibition, however, is not coextensive with the constitutional mandate. *See United States v. Dorfman,* 690 F.2d 1217, 1227–28 (7th Cir.1982).

First, as discussed above, several courts have held that answering a conventional telephone does not implicate a legitimate expectation of privacy. *See, e.g., Sangineto–Miranda,* 859 F.2d at 1513–14; *Passarella,* 788 F.2d at 379–81; *Vadino,* 680 F.2d at 1335. Second, several courts have held that telephone calls fall within the general language in a warrant regarding evidence of the crime and thus may be "seized." *See, e.g., Stiver,* 9 F.3d at 302–03; *Kane,* 450 F.2d at 84–85; *Fuller,* 441 F.2d at 760. Generally, these cases have involved illegal bookmaking or drug-dealing activities, and the courts have interpreted warrants authorizing the seizure of "paraphernalia" related to the illegal activities to include relevant oral communications. *See, e.g., Stiver,* 9 F.3d at 303; *Kane,* 450 F.2d at 84–85. Third, courts have upheld the answering of a telephone while conducting a search pursuant to a search warrant on the ground that the calls are reasonably related to the purpose of the search, so that the warrant need not explicitly authorize the "seizure." *See, e.g., Ordonez,* 737 F.2d at 810; *Seinfeld,* 632 F.Supp. at 624–25; *cf. Passarella,* 788 F.2d at 381 n. 4 (*dictum*). That is to say, if the telephone is necessary for the illicit business being conducted on the premises, and the agents are lawfully present, they may answer the telephone. *See Ordonez,* 737 F.2d at 810 (stating that "the telephone is highly necessary to an unlawful organization selling cocaine out of private residences"); *cf. Passarella,* 788 F.2d at 381 ("[O]nce lawfully present, the police may answer a ringing telephone.").

I have already rejected the first rationale as meritless. As for the second and third rationales, neither is applicable here. In all of the conventional telephone cases decided on these grounds, law enforcement officers were conducting searches of the premises pursuant to valid warrants. In each case, therefore, a neutral magistrate authorized the officers' intrusion on privacy interests—and, more important for present purposes, set limits on the scope of such intrusion. The warrants, in other words, served to "limit[ ] the area and duration of the search[es]," thereby "prevent[ing] the police from conducting general searches, or from converting specific warrants into general warrants." *Horton v. California,* 496 U.S. 128, 139–40, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *see Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) ("By limiting the authorization to search to specific areas and things for which there is probable cause to search, [a warrant] ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."); *cf. Terry v. Ohio,* 392 U.S. 1, 17–19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." (citations omitted)). In each of these cases, therefore, when the officers, within a reasonable time, left the premises, not only had their search ended, but so had their license to answer the resident's telephone without unlawfully intruding on his privacy.

Here, by contrast, there was no limitation on the government's ability to intrude on Bulton's privacy. Unlike the telephone lines in *Stiver, Ordonez* and the other cases cited by the government, the telephone in the present case was not fixed in place on premises that the government was obligated to vacate within a reasonable time. Instead, as a cellular telephone, it functioned even in the government's possession off the premises—a possession which continues and could even become permanent. *See* 21 U.S.C. § 881(a)(2) (establishing that "equipment of any kind which [is] used ... in delivering, importing, or exporting any controlled substance" is subject to forfeiture). To allow government agents to answer a telephone without a warrant under such circumstances, therefore, would allow just the sort of "indiscriminate searches ... conducted under the authority of 'general warrants'" that

the Framers of the Fourth Amendment sought to prohibit. *Payton v. New York,* 445 U.S. 573, 583 & n. 21, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *see also Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (stating that the Warrant Clause was intended to prohibit "general, exploratory rummaging in a person's belongings" (internal quotation marks and citation omitted)).

To be sure, the agents in the present case inventoried and stored Bulton's telephone on the day of his arrest, and have not answered it since—thus limiting the duration of whatever privacy intrusion Bulton suffered. But the Fourth Amendment was designed to prevent citizens' having to rely on the constable's good faith for protection of their privacy. Accordingly, the argument for a general exception to the warrant requirement for cellular telephone calls must be rejected.

### IV.

My conclusion that answering an arrestee's cellular telephone constitutes a search and that, generally speaking, a warrant is required to conduct that search does not, however, dispose of this case. The Fourth Amendment forbids "unreasonable searches and seizures." U.S. Const. amend. IV. Although a warrant bears on the reasonableness of a search, in certain limited circumstances a warrant is not required. *See, e.g., New Jersey v. T.L.O.,* 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The "underlying command of the Fourth Amendment is always that searches and seizures be reasonable," and "what is reasonable depends on the context within which a search takes place." *Id.* at 337, 105 S.Ct. 733; *see Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ("The ultimate standard set forth in the Fourth Amendment is reasonableness."); *Cooper v. California,* 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) ("[W]hether a search [or] seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . . .").

■ On the facts and circumstances presented here, answering Bulton's cellular telephone was not unreasonable. In fact, it would be unreasonable to hold otherwise—that is, to establish a rule that required law enforcement agents to obtain a warrant under circumstances like these. In the period following arrest but before arraignment, government agents are obligated to perform myriad tasks, from transporting the arrestee, to helping a prosecutor draw up the complaint, to fingerprinting and otherwise processing the arrestee, to preparing the arrestee for presentation to a magistrate. *Cf. County of Riverside v. McLaughlin,* 500 U.S. 44, 56–57, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (discussing the "practical realities" that occasionally cause "unavoidable delays" in the presentation of arrestees to a magistrate). Moreover, all of these tasks must be performed within a reasonable time. *See id.* at 55–57, 111 S.Ct. 1661. Under such circumstances, it would be impracticable to require agents to obtain a warrant to answer an arrestee's cellular telephone in anticipation of the possibility, however remote, that the telephone might ring. *See United States v. Cattouse,* 846 F.2d 144, 147 (2d Cir.1988) ("[E]ven if the agents might have been able to obtain a warrant earlier in the day, their failure to do so at the first opportunity does not bar them from acting on an exigency that arises later."); *see also United States v. Lopez,* 937 F.2d 716, 723 (2d Cir.1991) (stating that the Fourth Amendment does not require government agents "to obtain a warrant at the earliest possible moment; instead, they may wait 'until events have proceeded to a point where the agents could be reasonably certain that the evidence would ultimately support a conviction' " (quoting *United States v. Miles,* 889 F.2d 382, 383 (2d Cir.1989)); *cf. Terry,* 392 U.S. at 20, 88 S.Ct. 1868 ("[T]he police must, *whenever practicable,* obtain advance judicial approval of searches and seizures." (emphasis added)).

When it is impracticable for government agents to get a warrant, as in these circumstances, the Fourth Amendment does

not require those agents to ignore potential evidence that might disappear. To the contrary, when "the delay necessary to obtain a warrant ... threaten[s] 'the destruction of evidence,'" no warrant is required for a search or seizure. *Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Thus, when the telephone rang while the agents were booking Bulton, it was reasonable for them to answer it, notwithstanding that they could conceivably have obtained a warrant in anticipation of the telephone ringing. Having arrested Bulton for narcotics conspiracy, the agents had probable cause to believe that calls to his cellular telephone—a common tool of the drug trade—would provide evidence of his criminal activity, *cf. Ordonez,* 737 F.2d at 810 (describing the telephone as "highly necessary to an unlawful organization selling cocaine out of private residences"), and it was not unreasonable for the agents to "seize" that evidence without a warrant before it disappeared.[4]

To be sure, at some point, it would become unreasonable for government agents to continue answering an arrestee's cellular telephone without obtaining a warrant, notwithstanding the exigent circumstances that would exist each time the telephone rang. Were it otherwise, government agents would be justified in answering an arrestee's cellular telephone each time it rang *ad infinitum,* thereby rendering the warrant requirement a requirement in name only. The point when continued answering of an arrestee's cellular telephone without a warrant becomes unreasonable, however, is unlikely to come before arraignment, when the agents are under the burden of preparing the defendant himself for presentation to a magistrate. In short, answering an arrestee's cellular telephone without a warrant in the period before arraignment—so long as the arraignment itself is not unreasonably delayed—is presumptively reasonable and does not violate the Fourth Amendment.

In the present case, it is undisputed that the agents answered Bulton's cellular telephone prior to arraignment. Because Bulton presents no evidence to rebut the presumption of reasonableness in such circumstances, the agents' answering the calls without a warrant did not violate the Fourth Amendment, and the evidence of the calls need not be suppressed.

\* \* \* \* \* \*

For the foregoing reasons, Bulton's motion to suppress evidence of the post-arrest telephone calls to his cellular telephone is denied.

SO ORDERED.

---

**4.** If Bulton's cellular telephone had been off at the time of his arrest, the outcome of this case might have been different. In *United States v. Reyes,* 922 F.Supp. 818 (S.D.N.Y. 1996), the Court held that when a government agent turns an electronic pager on without a warrant, he may not use the resulting exigent circumstances to justify his search because those circumstances were of his own making. *See id.* at 834–36. Nevertheless, because it appears that Bulton's telephone was on when he was arrested, it is unnecessary for me to decide whether the same rule would apply to cellular telephones.