**UNITED STATES of America**

v.

**William & Donna DAUBMANN.**

**No. 05–CR–30067–MAP.**

United States District Court,
D. Massachusetts.

June 29, 2007.

Michael P. Ben'Ary, U.S. Department of Justice, Tax Division Criminal Enforcement, John P. McAdams, U.S. Department of Justice, Washington, DC, for Plaintiff.

Vincent A. Bongiorni, Springfield, MA, Scott Evans Skolnick, Feeding Hills, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING DEFENDANTS' SUPPLEMENTAL JOINT MOTION TO SUPPRESS PHYSICAL SEARCHES (Dkt. No. 63)*

PONSOR, District Judge.

On August 28, 2002, agents of the Internal Revenue Service searched the premises of Defendants' businesses, Mr. Showerdoor and Unique Storage Systems, located at 646 Springfield Street in Feeding Hills, Massachusetts. The search occurred pursuant to a warrant issued by Chief Magistrate Judge Kenneth P. Neiman, which described the area to be searched as follows:

> All rooms and hallways of the building, except the in-law apartment, including the hallways, basement and attic, are to be searched. The in-law apartment is a self-contained unit within the building.

One door to the in-law apartment is located at the rear of the attached garage. The other is located in the hallway where records for the Daubmanns' businesses were stored as described above in Paragraph 55.f. The hallway begins near a large counter on the side of the businesses' showroom opposite the Homer Street entrance and runs straight to the door of the in-law apartment, which was gray in color at the time the [Confidential Witness] worked for the Daubmanns.

(Dkt. No. 31, Exh. A, Application and Aff. for Search Warrant, Attach. A 29.)

The reference to "Paragraph 55.f" in the segment quoted above refers to a portion of the affidavit in support of the warrant application which states that records for Defendants' businesses were stored "in boxes in the hallway located between the business and an attached apartment where Donna Daubmann's parents lived each year from April to October. . . ." (Dkt. No. 31, Exh. A, Application and Aff. for Search Warrant 20.)

A rough sketch of the areas pertinent to the search and to this memorandum is attached as Exhibit A. This sketch, which was originally labeled "B," was prepared by Defendants, but is in most respects uncontested by the government. One detail in the sketch that is the source of considerable dispute is the reference "door to apartment" with an arrow pointing to what appears to be a door with the notation in small handwriting "alarm perimeter." The government vigorously disagrees with the suggestion that the door indicated by the arrow is in fact the door to the forbidden "in-law apartment."

It is uncontested that when the agents conducted the search, they instructed Defendant's mother to open the door marked with the arrow. They then entered through this door into the hallway marked "B" on the sketch and instructed Defendant's mother to retreat from the hall back into her bedroom. The agents then conducted a search of the hallway ("B") and proceeded into the area marked "D" on the sketch and conducted a search there. In addition, they conducted a search of what is called the "furnace room" ("E"). In areas "B," "D," and "E," they discovered incriminating documents.

The question before the court is whether the agents exceeded the mandated scope of the warrant and entered the "in-law apartment" when they conducted their search in the areas marked "D" and "E" on the attached sketch. Defendants argue that the areas marked "D" and "E" were in fact part of the "in-law apartment," and that no reasonable interpretation of the search warrant would justify a search of that area. Defendants agree that the hallway ("B") was properly searched.

Whether the areas marked "D" and "E" were, *in fact*, part of the in-law apartment, or whether they were subjectively viewed by Defendants' parents as being part of their apartment, may be a matter of reasonable debate. On the other hand, there can be no debate that the areas marked "D" and "E" were within the scope of the search authorized by the warrant, and that the agents reasonably interpreted the warrant in determining that they were authorized to search those areas. A review of the details of the warrant makes this conclusion inescapable.

As a preliminary matter, it must be emphasized that the warrant authorized a search of "*[a]ll* rooms and hallways of the building, *except* the in-law apartment. . . ." (Gov't's Response to Motion to Suppress, Dkt. No. 31, Exh. A, Application and Affidavit for Search Warrant, Attachment A at 29 (emphasis supplied).) Thus, the agents were permitted to search throughout the

building, except within the perimeter demarcating the in-law apartment.

■ The warrant clearly marked out this perimeter. One door to the in-law apartment was located at the rear of the attached garage. This entrance is adjacent to the portion of the attached sketch marked "lower area" and includes the entry into the kitchen. The other doorway, according to the warrant, is "located in the hallway where the records for the Daubmanns' businesses were stored as described above in Paragraph 55.f." In referring to a doorway located "in the hallway," the warrant must be referring to the doors leading off the hallway ("B") and into the bedroom and livingroom of the in-law apartment, and not to the doorway incorrectly marked on the sketch as "door to apartment." That door could not be described as "in the hallway." In the final sentence of the pertinent paragraph, the hallway is described as running "straight to the door to the in-law apartment...." Again, this suggests that the hallway "B" ran to the doorways into the livingroom and bedroom of the in-law apartment, which were "the door[s] to the in-law apartment."

In addition, the hallway "B" opens out into the area "D" with no intervening door. The in-law apartment, on the other hand, is described as "a self-contained unit within the building." The fact that the area "D" simply opens off the connecting hallway is inconsistent with the notion that the in-law apartment is "self-contained."

Admittedly, the actual furnishings of area "B" do not suggest that they are part of the businesses' commercial operations. The room contains a hot tub, futon, media center, exercise bike, and pool table. It is possible that Defendants' parents used this area for recreation. It is also possible that Defendants or other employees of the business put it to the same use. The presence of the furnishings in the area, however, does not require a conclusion that the area was part of the in-law apartment. At the same time, the large number of business documents discovered to be stored in area "D" and particularly in the furnace room ("E") tends to undercut any suggestion that it was considered by Defendants' parents to be part of their exclusive living space.

It is undisputed that the agents scrupulously respected the area of the in-law apartment as outlined in the warrant. In avoiding any invasion of this area, the agents were in full compliance with the limitations set forth in the warrant.

■ Moreover, even if the warrant's language was subject to interpretation, the officers' interpretation was reasonable. "[O]fficers executing a search warrant are 'not obliged to interpret it narrowly.'" *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 517 (8th Cir.2005) (*quoting United States v. Stiver*, 9 F.3d 298, 302 (3d Cir.1993)). The Eighth Circuit reasoned that "the concept of a 'narrow construction' is a convention of legal jurisprudence and would be an unworkable demand to place upon law enforcement...." *Id.; see also Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir.1992) (explaining that officers should not interpret warrant narrowly because improperly seized items can be returned, while unseized evidence might be destroyed and "[t]he prosecutor is in a better position to winnow the wheat from the chaff than the police are.").

The court will apply an "objective test" in determining whether "a reasonable officer [would] have interpreted the warrant to permit the search at issue." *United States v. Gorman*, 104 F.3d 272, 274 (9th Cir.1996). Viewing the search objectively, even assuming that some ambiguity existed in the language of the warrant (and the

court finds none), the agents interpreted these provisions reasonably. As Justice Stevens noted in *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), the Supreme Court has "recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Id.* at 87, 107 S.Ct. 1013 (footnote omitted).

For the foregoing reasons, Defendants' Supplemental Joint Motion to Suppress is hereby DENIED. This case will proceed to trial on September 10, 2007.[1]

It is So Ordered.

---

1. Defendants have also renewed their argument that the evidence sized in areas "D" and "E" should be suppressed based on a lack of particularity in the warrant. No basis has been offered to justify changing the court's ruling denying the motion to suppress on this ground.