STATE of Wisconsin,
Plaintiff-Appellant,

v.

Jermichael James CARROLL,
Defendant-Respondent.†

Court of Appeals

*No. 2007AP1378–CR. Oral argument September 17, 2008.
—Decided October 28, 2008.*

2008 WI App 161

(Also reported in 762 N.W.2d 404.)

† Petition to review pending.

691

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *J.B. Van Hollen*, attorney general and *James M. Freimuth*, assistant attorney general. There was oral argument by *James M. Freimuth*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael K. Gould*, assistant state public defender. There was oral argument by *Michael K. Gould*.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. The State of Wisconsin appeals from an order suppressing photographic evidence obtained from a cell phone that was seized from Jermichael James Carroll. We reverse because we conclude that the evidence was ultimately seized pursuant to a valid search warrant.

## BACKGROUND

¶ 2. At issue is an order suppressing evidence obtained from the defendant's cell phone after he was stopped for speeding. The following facts are taken from the complaint, a search warrant application and the detective's testimony at the suppression hearing.

¶ 3. On December 6, 2006, Detective John Belsha and his partner, an FBI special agent, were conducting an armed robbery investigation. They had a particular house under surveillance. They saw a vehicle—which Belsha said may have been related to the armed robbery —depart from a location near the house. Belsha said the vehicle "slowed down and went past us and picked up its speed immediately."

¶ 4. Belsha and his partner pursued the vehicle, which was driven by Carroll.[1] To keep up with the vehicle, Belsha had to travel at speeds up to sixty miles per hour while the vehicles were in a twenty-five-miles-per-hour residential zone. Belsha said Carroll eventually pulled into a gas station and "came to an abrupt stop." Belsha testified: "Carroll exited the driver's seat very quickly; at which time, I exited my vehicle. He had something in his hand, so I drew my service weapon and ordered him to drop what was in his hand and get down on the ground." Belsha did not immediately retrieve the dropped item, which he said he thought might be a weapon, and proceeded to secure Carroll by handcuffing him and patting him down.

¶ 5. Next, Belsha picked up the item Carroll had dropped, which was a cell phone. Belsha said the cell phone was open and displayed a picture of Carroll smoking "what's commonly referred to as a blunt, a marijuana cigarette, a cigar."

¶ 6. Carroll was asked for identification. Carroll gave his name, but indicated he did not have any identification with him. The officers ran a routine wanted check on Carroll's name and learned that his

---

[1] The record is silent as to whether Belsha used lights or sirens to indicate that he was attempting to stop the car.

driver's license was suspended and therefore he should not have been driving.

¶ 7. Belsha testified that Carroll was "taken into custody," although there was no testimony that anyone told Carroll he was under arrest. Carroll was placed in the back seat of Belsha's vehicle.

¶ 8. Belsha said that as Carroll sat in the back of Belsha's vehicle, Belsha scrolled through the cell phone's photo gallery. Belsha testified that he saw "several pictures of what [he] believe[d] to be illegal drugs, firearms and large amounts of US currency."

¶ 9. Subsequently, Belsha filed an application for a search warrant to retrieve from the cell phone "stored telephone numbers, address book names, video clips, photographs, and related information." Belsha's affidavit in support of the warrant stated that he believed that the cell phone would produce evidence of possession of cocaine, possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, and possession of a firearm by a felon. The application explained that Belsha's search of the cell phone had revealed several images of Carroll with a firearm, and that Carroll was not permitted to possess a firearm because he had been adjudicated delinquent for a felony offense.

¶ 10. The application also referenced drugs. It stated: "[T]here are photos of Carroll with what appears to be a quantity of marijuana, photos of what appears to be cocaine, as well as a photo of drugs, money, and a revolver." The affidavit did not mention the photo Belsha observed when he picked up the cell phone after Carroll dropped it on the ground.

¶ 11. Belsha's affidavit stated as follows. While he had the cell phone in his vehicle, the phone rang multiple times. Belsha answered one of the calls and

pretended to be Carroll. The caller asked Belsha for "4 of those things; 4 and a split," which, based on Belsha's "training and experience in investigations related to the distribution of controlled substances," Belsha interpreted as a request to purchase four-and-one-half ounces of cocaine.

¶ 12. The warrant was signed by a court commissioner on December 8, 2006. Belsha had the photographs retrieved from the cell phone. They included pictures of Carroll with a semi-automatic firearm and photos of a revolver. Based on these photographs, Carroll was charged with one count of being a felon in possession of a firearm. Following the preliminary hearing, where the trial court heard additional testimony about the guns in the photographs, an information was filed alleging two counts of being a felon in possession of a firearm.

¶ 13. Carroll moved to suppress the evidence seized from the cell phone. He argued that Belsha's warrantless search of his cell phone's photo gallery at the scene of the traffic stop was unlawful. He further argued that the evidence obtained through the search warrant should have been suppressed because the warrant application was based on information gathered during the warrantless search of the cell phone. In response, the State argued that Carroll was under arrest when Belsha looked through the cell phone's photo gallery, and that the viewing of the cell phone's photo gallery was part of a lawful search incident to arrest.

¶ 14. The trial court accepted Belsha's testimony and made the following findings of fact. Carroll dropped the cell phone when Belsha ordered him to do so. The cell phone landed in an open position, revealing a single

photo of Carroll smoking what Belsha believed to be marijuana. When Belsha observed that photo, it was in plain view.[2]

¶ 15. The trial court concluded that the search of the cell phone's photo gallery was illegal, and that the evidence gained from that illegal search had formed the basis for the search warrant. It specifically held that without the information obtained from scrolling through the cell phone, there were insufficient grounds to issue the search warrant. Thus, the trial court granted the motion to suppress evidence obtained pursuant to the search warrant.

¶ 16. In making its ruling, the trial court found that Carroll was not under arrest when the cell phone's photo gallery was viewed. The trial court also observed that if Carroll had been under arrest, the search of the cell phone would not have been appropriate to insure officer safety, but perhaps could have been legal based on court decisions that have allowed searches incident to arrest. In any event, the trial court said, the search of the cell phone was illegal because Carroll was not under arrest. The State now appeals the order suppressing the photographic evidence seized from Carroll's cell phone.

## STANDARD OF REVIEW

██

¶ 17. "[W]hether a search or seizure is reasonable under the Fourth Amendment is a question of constitutional fact." *State v. Kieffer*, 217 Wis. 2d 531, 541, 577 N.W.2d 352 (1998). We uphold the trial court's findings of evidentiary or historical fact unless those findings are clearly erroneous and then independently apply the law

---

[2] None of these cell phone-related details or observations appears in the application for the warrant, except the warrant application states that Carroll dropped the cell phone as ordered.

to those facts. *State v. Hughes*, 2000 WI 24, ¶ 15, 233 Wis. 2d 280, 607 N.W.2d 621. In this case, no one challenges the trial court's findings, which accepted Belsha's testimony as true and accurate. Thus, we will apply a *de novo* analysis of the law to those facts in order to determine whether the evidence gathered from Carroll's cell phone should have been suppressed. *See id.*

## DISCUSSION

¶ 18. The State challenges the suppression of photographic evidence seized from Carroll's cell phone. It argues the detective lawfully searched the cell phone's photo gallery as a valid search incident to arrest, and that the evidence gathered during that search, as well as during the subsequent search under the search warrant, is admissible. In the alternative, the State argues that even if the warrantless search of the cell phone's photo gallery was invalid, the subsequent search under the warrant was valid because untainted evidence (i.e., evidence that a person called Carroll's cell phone and asked to buy drugs) provided probable cause for the warrant. We conclude that the second issue is dispositive and, therefore, we do not address whether an officer can search a defendant's cell phone's photo gallery as part of a search incident to arrest. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[s].").

## I. The cell phone call evidence provided probable cause for the warrant.

¶ 19. We begin our analysis with the warrant application. We assume for purposes of this opinion that

evidence gathered when Belsha scrolled through the cell phone's photo gallery was improperly obtained. The key remaining evidence offered in the warrant application was Belsha's assertion that he answered Carroll's cell phone and the caller asked Belsha for "4 of those things; 4 and a split," which, based on Belsha's "training and experience in investigations related to the distribution of controlled substances," meant a request to purchase four-and-one-half ounces of cocaine. We conclude that if this cell phone call evidence was properly obtained (an issue we analyze in Section II below), it provided probable cause to justify the warrant.

■

¶ 20. "[W]here there is sufficient untainted evidence presented in the warrant affidavit to establish probable cause, the warrant is valid." *State v. Herrmann*, 2000 WI App 38, ¶ 21, 233 Wis. 2d 135, 608 N.W.2d 406 (citing *United States v. Karo*, 468 U.S. 705, 719 (1984)). On review of a search warrant that was issued based on both tainted and untainted evidence, we independently determine whether the untainted evidence was sufficient to support a finding of probable cause. *Id. Herrmann* explained:

> The test for the issuance of a search warrant is whether, considering the totality of the circumstances set forth in support of the warrant, probable cause exists to believe that objects linked to the commission of a crime are likely to be found in the place designated in the warrant.

*Id.,* ¶ 22.

¶ 21. The State argues that the evidence gathered from the caller when Belsha answered the cell phone provided sufficient probable cause that the cell phone contained evidence of a crime. Carroll does not dispute

this.[3] We conclude, considering the totality of the circumstances, that the call to Belsha, combined with Belsha's training and experience in investigations related to the distribution of controlled substances, provided probable cause to believe that the cell phone contained evidence of a crime (i.e., drug trafficking). *See id.*

¶ 22. Having concluded that the cell phone call evidence provided probable cause to issue the warrant, the remaining questions before us are whether Carroll was under arrest, in which case Belsha could seize the cell phone incident to arrest; and whether Belsha could lawfully answer the ringing cell phone.

## II. The cell phone call evidence was legally obtained, and therefore was untainted.

### A. The detective had lawful possession of the cell phone.

¶ 23. "[W]arrantless searches are per se unreasonable under the Fourth Amendment and Article I, Section 11 of the Wisconsin Constitution." *State v. Young*, 2006 WI 98, ¶ 54, 294 Wis. 2d 1, 717 N.W.2d 729. One exception to the Fourth Amendment's warrant requirement is for searches conducted incident to a lawful arrest. *Id.*; *see also State v. Payano-Roman*, 2006 WI 47, ¶ 31, 290 Wis. 2d 380, 714 N.W.2d 548 ("A lawful arrest gives rise to heightened concerns that may

---

[3] Carroll's argument against the cell phone call evidence is not that it provides insufficient probable cause, but that the evidence is tainted because the detective was not in lawful possession of the cell phone when he answered it. We address this issue in Section II.

700

justify a warrantless search, including the need to discover and preserve evidence."). This is true even if the defendant's actions were noncriminal in nature. *State v. Pallone*, 2000 WI 77, ¶ 43, 236 Wis. 2d 162, 613 N.W.2d 568 ("[T]he Fourth Amendment does not preclude searches incident to arrests for noncriminal violations."). Carroll does not dispute Belsha's right to search him if he was indeed under arrest. Rather, he argues that he was not under arrest at the time his cell phone was seized.

■■

¶ 24. In Wisconsin, the test for whether a person has been arrested is

> whether a reasonable person in the defendant's position would have considered himself or herself to be "in custody," given the degree of restraint under the circumstances. The circumstances of the situation including what has been communicated by the police officers, either by their words or actions, shall be controlling under the objective test.

*State v. Swanson*, 164 Wis. 2d 437, 446–47, 475 N.W.2d 148 (1991) (citations omitted), *abrogated on other grounds by State v. Sykes*, 2005 WI 48, ¶ 27, 279 Wis. 2d 742, 695 N.W.2d 277. We have observed that although this standard has been applied numerous times, "no case establishes a bright-line rule as to when an arrest has been effected. Instead, each case focuses on the totality of the circumstances in the record to determine whether a reasonable person in the defendant's position would have believed he or she was under arrest." *State v. Marten-Hoye*, 2008 WI App 19, ¶ 27, 307 Wis. 2d 671, 746 N.W.2d 498.

¶ 25. We must apply these legal standards to the facts as found by the trial court, which accepted

Belsha's testimony as true. Applying the *Swanson* test, Carroll argues that he was not under arrest at the time Belsha seized the cell phone. Carroll asserts that a reasonable person "would have believed that the police were detaining him while conducting a criminal investigation," but would not have believed he was under arrest when he had not been told he was under arrest, when he had been in the squad car for only a few minutes, and where it is not usual police practice to arrest people for traffic violations. He notes that he was not necessarily under arrest just because the officers drew their weapons and placed him in Belsha's vehicle. *See Jones v. State,* 70 Wis. 2d 62, 70, 233 N.W.2d 441 (1975) (an investigative stop does not become an arrest merely because the police draw their weapons); *State v. Quartana,* 213 Wis. 2d 440, 444–45, 570 N.W.2d 618 (Ct. App. 1997) (suspected drunk driver was not under arrest when police put him in squad car and transported him to scene of accident).

¶ 26. While a person is not necessarily under arrest just because the officers display their weapons and place the individual in a squad car, those facts can support a determination that an arrest occurred. In this case, the most pertinent facts that lead us to conclude that Carroll was under arrest include:

- Carroll was driving with a suspended license and the officers learned of his status shortly after he stopped the car;

- Carroll led Belsha on a high-speed chase that reached speeds of up to sixty miles per hour in a residential zone;

- Carroll pulled into a gas station and stopped his car abruptly;

702

- Carroll immediately exited the vehicle;

- Belsha pointed his gun at Carroll and "ordered him to drop what was in his hand and get down on the ground";

- Carroll dropped the object, was handcuffed and remained on the ground while Belsha retrieved the cell phone and asked Carroll for identification, which Carroll could not provide;

- An unknown number of police squads arrived on the scene; and

- Carroll was placed in the back of Belsha's vehicle, still handcuffed.

We conclude that at this point, a reasonable person in Carroll's position would have considered himself to be "in custody," given the degree of restraint under the circumstances. *See Swanson*, 164 Wis. 2d at 446–47. The facts that one may not generally be arrested for speeding and that there is no evidence Carroll was told he was under arrest do not dissuade us from this conclusion because of the substantial show of force and physical restraint present in this case. *See id.* (objective test to determine if person has been arrested considers officer's communications by words and actions).

### B. The detective properly answered the incoming cell phone call.

¶ 27. The State argues that Belsha was constitutionally permitted to answer Carroll's ringing cell phone. In his brief, Carroll did not address the State's argument, except to reason that because he was not under arrest, Belsha did not have lawful possession of the cell phone and, therefore, could not answer it. There are no reported decisions in Wisconsin that

resolve this question. At oral argument, the State provided additional authority for its assertion that an officer can answer a ringing phone under certain circumstances, citing *United States v. De La Paz*, 43 F. Supp. 2d 370 (S.D.N.Y. 1999).[4]

¶ 28. In *De La Paz*, the court denied the defendant's motion to suppress evidence obtained after an FBI agent answered the defendant's ringing cell phone at FBI headquarters, without a warrant, while agents were processing the defendant's arrest. *Id.* at 371, 375–76. The court recognized that it was impracticable for the agents to get a warrant to answer the cell phone. *Id.* at 375–76. The court also observed that the defendant had been arrested for drug trafficking. *Id.* at 376. The court explained its holding:

> Having arrested [the defendant] for narcotics conspiracy, the agents had probable cause to believe that calls to his cellular telephone—a common tool of the drug trade—would provide evidence of his criminal activity . . . and it was not unreasonable for the agents to "seize" that evidence without a warrant before it disappeared.

*Id.* (citation omitted).

¶ 29. We conclude that the rationale of *De La Paz* applies equally here. The detective was legally in possession of the cell phone when it rang because, as we have explained, it had been seized pursuant to a search incident to arrest. At the time it rang, the detective had probable cause to believe that Carroll may be involved

---

[4] After oral argument, Carroll provided a written response to several arguments made at oral argument. This response did not discuss *United States v. De La Paz*, 43 F. Supp. 2d 370 (S.D.N.Y. 1999).

in drug use because the detective had observed a photo of Carroll in plain view, smoking what appeared to be a marijuana blunt. Based on the detective's training and experience, the detective was aware (as he stated in his affidavit for the search warrant), that "[d]rug traffickers frequently take, or cause to be taken, photographs of themselves, their associates in the drug trade, and property acquired from the distribution of drugs and such photographs are often ... [used to] personalize cellular telephones with such information." It would have been impossible to obtain a warrant prior to answering the call. Under these circumstances, we conclude that it was not unreasonable for the detective to " 'seize' that evidence [of the incoming call] without a warrant before it disappeared." *See id.*

## CONCLUSION

¶ 30. We assume for purposes of this opinion that the detective who seized Carroll's cell phone improperly scrolled through the cell phone's photo gallery without a search warrant. We conclude that untainted evidence the detective obtained when he properly answered an incoming call on Carroll's cell phone (i.e., evidence that the caller wanted to buy drugs from Carroll) provided independent probable cause to obtain the warrant to search the cell phone. For these reasons, we reverse the suppression order and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.